# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION AT COLUMBUS

JAMES CODY,

                                  :

       Petitioner,                        Case No. 2:10-cv-974

                                  :       District Judge Edmund A. Sargus, Jr.

     -vs-                                 Magistrate Judge Michael R. Merz

ROB JEFFREYS, Warden,

                                  :

       Respondent.

---

## REPORT AND RECOMMENDATIONS

---

This is a habeas corpus case brought *pro se* by Petitioner James Cody pursuant to 28 U.S.C. § 2254 (Petition, Doc. No. 2). On the Court's Order (Doc. No. 3), the Warden has filed a Return of Writ (Doc. No. 6) to which Petitioner has filed a Reply (Doc. No. 9). The case is therefore ripe for decision.

The Petition pleads one ground for relief:

> **Ground One:** The State of Ohio failed to apply the constitutional protections against Double Jeopardy found in the Fifth Amendment when it convicted Petitioner of two allied offenses of similar import.

(Petition, Doc. No. 2, PageID 21.)

**Procedural History**

Petitioner James Cody was indicted by the Franklin County grand jury in a two count Indictment charging violations of Ohio Revised Code §§ 2909.02(A)(1) and 2909.02(A)(2) (Return of Writ, Doc No. 6, Ex. 1, PageID 71-73).  The case was tried to a jury which convicted Cody on both counts.  He was then sentenced to eight years on Count 1 and a consecutive seven years on Count 2.  *Id.* Ex. 3, PageID 75-76.

Cody appealed to the Franklin County Court of Appeals, raising five assignments of error.  For purposes of this habeas corpus case, the relevant assignment was number five:

> The two aggravated arson counts are allied offenses of similar import committed with a single animus.  The court erred by imposing separate and consecutive sentences for the two offenses when it should have directed the prosecutor to elect [on] which offense conviction should be entered and sentence pronounced.

(Brief of Appellant, Return of Writ, Ex. 5, PageID 79 et seq.)  The background facts of the underlying crime as recited by the Court of Appeals are as follows:

> [¶3] The matter came for trial before a jury beginning January 16, 2007. In June of 2006, Kathy Edwards rented an apartment at 3518 Sanita Court, Columbus, where she resided with her three children and her mother. Prior to June of 2006, Edwards and appellant had been involved in a dating relationship, lasting approximately ten months. After the relationship ended, in March of 2006, appellant continued to phone Edwards. According to Edwards' testimony, the calls were harassing in nature. Sometimes appellant would just hang up, but other times he would threaten her, including threats that her son would be "found dead somewhere," and that her mother was "going to die." (Tr. Vol. I, at 140.)
>
> [¶4] On June 14, 2006, at approximately 4:00 a.m., Edwards heard "a shattering noise like some glass breaking." (Tr. Vol. I, at 142.) The noise awakened everyone in the house, and Edwards heard her daughter scream, "[m]om, mom." (Tr. Vol. I, at 142.) Edwards

instructed her mother and children to go outside, and police and fire personnel were called to the residence.

[¶P5] Columbus Fire Lieutenant Stuart Tudor, who was dispatched to the scene, observed Edwards and her children standing outside the residence. Edwards told him that she had heard a loud noise downstairs, sounding like a crash or an explosion. As Lieutenant Tudor entered the residence, he smelled an odor of gasoline, and he discovered that an explosion had occurred inside the laundry room, where the smell of gasoline was particularly strong. The lieutenant noticed an "obvious" accelerant had been present in that room. (Tr. Vol. I, at 35.)

[¶6] Other firemen also arrived at the scene, and they pulled out the washer and dryer and noticed gasoline in the dryer vent. Outside the apartment, near an exterior vent, firemen found a pack of matches and discovered gas residue on the outside of the building. At that point, Lieutenant Tudor called an arson inspector to the scene.

[¶7] Josh Brent, a member of the fire investigation unit of the Columbus Fire Department, arrived at the residence at approximately 5:00 a.m. on the date of the incident. As he entered the apartment, Brent noticed a strong smell of accelerant; he subsequently observed, on the exterior of the building, burn marks around the dryer vent lid. Brent opined that the cause of the damage to the residence resulted from someone pouring an accelerant from the exterior of the dryer vent hole into the dryer vent tube, which was then lit by an open flame, causing an explosion. The explosion caused the laundry room door to be completely blown off its hinges. At trial, the parties stipulated that a liquid sample recovered by investigators from the dryer vent contained gasoline.

[¶8] Brent interviewed Kathy Edwards as part of the investigation, and as a result of that conversation he sent John Throckmorton, a member of the fire department's arson squad, to Edwards' apartment to listen to, and make a recording of, voice messages from Edwards' cell phone. Edwards testified regarding the statements on the recordings, and she identified the voice on the messages as that of appellant. On one of the messages, the voice threatened Edwards that "there was a bullet with my name on it[.]" (Tr. Vol. I, at 147.) In other messages, the caller told Edwards to "get my family and leave," and "that the next time my mom will blow up." (Tr. Vol. I, at 147.) A further message threatened Edwards that she was "going to have two dead kids." (Tr. Vol. I, at

> 147.) At trial, over the objection of defense counsel, the tape containing the various recorded voice messages was played for the jury.
>
> [¶9] Brent subsequently learned that appellant was working at a construction job site on North High Street, so he traveled to the job site. Brent spoke with appellant's supervisor, who agreed to allow Brent to interview appellant in an office at the site. Appellant, however, never came into the office. Brent left the office and attempted to find appellant but he was unsuccessful; Brent observed, however, appellant's hard hat lying in the hallway outside the office.

*State v. Cody,* No. 07AP-142, 2007 Ohio 6776, 2007 Ohio App. LEXIS 5938 (Ohio App. 10th Dist. Dec. 18, 2007). The Ohio Supreme Court, on further appeal, remanded for reconsideration in light of its decision in *State v. Cabrales*, 118 Ohio St. 3d 54 (2008), which had been handed down after the Court of Appeals decision in this case. *State v. Cody*, 118 Ohio St. 3d 366 (2008). On remand the Court of Appeals adhered to its prior decision that conviction on both counts was not barred by Ohio Revised Code § 2941.25. *State v. Cody*, No. 07AP-142, 2009 Ohio 3082, 2009 Ohio App. LEXIS 2616 (Ohio App. 10th District June 25, 2009). The Ohio Supreme Court then declined further review. *State v. Cody,* 2009 Ohio 5704, 915 N.E. 2d 1255, 2009 Ohio LEXIS 3143 (2009). This habeas corpus petition followed.

## Procedural Default

The Warden asserts the Ground for Relief is procedurally defaulted because it was never fairly presented to the Ohio courts as a federal constitutional claim (Return of Writ, Doc. No. 6, PageID 53).

Federal courts have authority to grant a writ of habeas corpus for convicted state prisoners only if they are held pursuant to a conviction obtained in violation of the United States

Constitution.  Before presenting such claims in federal court, state prisoners are required to "exhaust" the claim by "fairly presenting" it to the state courts so that they have had a full opportunity to address the claim and cure any constitutional error which may infect the conviction. 28 U.S.C. §2254(b) and (c);  *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Ex parte Royall*, 117 U.S. 241 (1886).  To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue.  *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th

Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).

As the Warden correctly points out, Cody's argument on direct appeal is entirely in terms of Ohio Revised Code § 2941.25.  Cody argued that that section of the Code had not been amended since "enactment of the 1974 Criminal Code" and cites interpretive Committee Comment "as an indication of the original legislative intent."  (Brief of Appellant, Doc. No. 6-1, PageID 93).  The following cases are cited as supportive of Cody's Fifth Assignment of Error: *State v. Rance*, 85 Ohio St. 3d 632 (1999); *State v. Donald,* 57 Ohio St. 2d 73 (1977*); Newark v. Vazirani,* 48 Ohio St. 3d 81 (1990); *State v. Brown,* 7 Ohio App. 3d 113 (1982); and *State v. Deem*, 40 Ohio St. 3d 205 (1988) – all cases interpreting Ohio Revised Code § 2941.25.

In affirming the conviction on direct appeal, the Tenth District Court of Appeals does not indicate it understands it is deciding a constitutional claim; the words "double jeopardy" or "constitution" do not appear anywhere in the decision, nor does the court cite any federal case law.

Cody appealed to the Ohio Supreme Court raising one Proposition of Law:  "The Double Jeopardy Clauses of the Ohio and Federal Constitutions are violated when the defendant is sentenced separately and consecutively for two offenses which are allied offenses of similar import." (Memorandum in Support of Jurisdiction, Doc. No. 6-1, PageID 176.)  The Proposition was argued as if the constitutional question was separate from the allied offense statute question. *Id.* at 180.  However, other than mentioning the constitutional clauses, counsel merely repeated verbatim the argument he had made in the Court of Appeals, citing no federal case law and making no attempt even to distinguish the cases relied on by the Court of Appeals.  *Id.* at 180-

6

183.

> The Ohio Supreme Court accepted the appeal, but its entire opinion reads:

>> Because the court of appeals entered its judgment on appellant's fifth assignment of error below prior to the release by this court of its opinion in *State v. Cabrales,* 118 Ohio St.3d 54, 2008 Ohio 1625, 886 N.E.2d 181, this cause is remanded to the court of appeals for consideration of whether the court of appeals' judgment should be modified in view of our opinion in *State v. Cabrales.*

Cody, 118 Ohio St. 3d 366 (2008). On remand, the Tenth District again affirmed the conviction, modifying its analysis to conform to *Cabrales*, but not discussing the federal constitution in any way or citing any federal case law as relevant.

In sum, the only mention of Double Jeopardy is a conclusory mention in the Ohio Supreme Court Memorandum in Support of Jurisdiction, followed by an argument entirely in terms of Ohio statutory interpretation.

The question, then, is whether Cody fairly presented the Double Jeopardy claim to the state courts when arguing only in terms of Ohio Revised Code § 2941.25. As the Warden acknowledges, this Court has previously held that a 2941.25 claim is sufficient to preserve a Double Jeopardy claim. *Palmer v. Haviland*, 2006 U.S. Dist. LEXIS 95890 (S.D. Ohio May 11, 2006), aff'd, 273 Fed. Appx. 480 (6th Cir. 2008), relying on the petitioner's having argued the state claim in terms of *State v. Rance, supra*, which utilized constitutional analysis.

While *Palmer* is not controlling on this Court's decision, it is persuasive. In *Palmer* Magistrate Judge Hogan relied on *McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000), and *Franklin v. Rose,* 811 F.2d 322 (6th Cir. 1987). In *Franklin* the Sixth Circuit cited with approval a Second Circuit analysis in *Daye v. Attorney General,* 696 F.2d 186 (2nd Cir. 1982), *after remand*, 712 F.2d 1566 (2nd 1983):

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like factual situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts well within the mainstream of constitutional litigation.

*Franklin*, 811 F.2d at 326, quoting *Daye*, 696 F.2d at 193-94.  The "pattern of facts" argued by Cody on direct appeal comes well within the mainstream of litigation under the Double Jeopardy Clause.  Moreover, appellate counsel and the court of appeals in this case relied on *Rance, supra,* the same Ohio Supreme Court case which Magistrate Judge Hogan noted in *Palmer* made extensive constitutional analysis in interpreting Ohio Revised Code § 2941.25.  The Ohio Supreme Court in *Rance* did not conflate the analysis under § 2941.25 with the Double Jeopardy analysis, but it did indicate that the comparison of elements test, which is common to both Double Jeopardy and § 2941.25 analysis, made "cases discussing and applying *Blockburger [v. United States,* 284 U.S. 299 (1932)] . . helpful, though not controlling, in our examination of Ohio law." *Rance*, 85 Ohio St. 3d at 636.  When that is combined with the actual reference to the Double Jeopardy Clause in the appeal to the Ohio Supreme Court, the Magistrate Judge concludes, although the question is close, that Petitioner fairly presented his Double Jeopardy claim to the Ohio courts.  Therefore, the Court should reject the procedural default defense and decide this case on the merits.

**Merits Analysis**

The Double Jeopardy Clause of the United States Constitution affords a defendant three

8

basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165(1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

The Double Jeopardy Clause of the Fifth Amendment was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985).

Petitioner was indicted, convicted, and sentenced for violating Ohio Revised Code §§ 2909.02(A)(1) and 2909.02(A)(2). On appeal, the court of appeals decided his fifth assignment of error as follows:

> [*P30] Under the fifth assignment of error, appellant asserts that the trial court erred in imposing separate and consecutive sentences for the two offenses. Specifically, appellant argues that the two aggravated arson counts are allied offenses of similar import that were committed with a single animus.

> [*P31] In *State v. Wallace,* Mahoning App. No. 06 MA 44, 2007 Ohio 6226, at P27, the court discussed the proper analysis in considering whether crimes are allied offenses of similar import, stating as follows:

The test for determining if two crimes are allied offenses of similar import is a two-prong test. The first prong is whether the elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other." *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816 * * *. Under this analysis, the elements of the crimes are compared in the abstract. *State v. Rance,* 85 Ohio St.3d 632, 636, 1999 Ohio 291, 710 N.E.2d 699 * * *. "If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends--the multiple convictions are permitted." Id. at 636, * * * citing R.C. 2941.25(B). However, if the elements do so correspond, the court must move to the second prong of the test -- whether the crimes were committed separately or with separate animus. Id. at 638-639, citing R.C. 2941.25(B) and *State v. Jones,* 78 Ohio St.3d 12, 14, 1997 Ohio 38, 676 N.E.2d 80 * * *. If the crimes were committed separately or with separate animus, the defendant may be convicted and sentenced to each of the multiple offenses. *Id*. at 636. But if it is determined that they were not committed separately or with separate animus then a defendant cannot be convicted and sentenced to each crime separately. *Id.*

**[\*P32]** In *State v. Campbell,* Hamilton App. No. C-020822, 2003 Ohio 7149, the defendant made the same argument as raised by appellant in the instant case, i.e., that his sentences under R.C. 2909.02(A)(1) and (A)(2) should have been merged because they were allied offenses of similar import committed with one animus, and involving a single course of conduct. The court in *Campbell,* supra, at P13-14, rejected this argument, holding:

A strict comparison-of-the-statutory-elements test is now used to determine whether offenses are allied and of similar import. See *State v. Rance,* 85 Ohio St.3d 632, 1999 Ohio 291, 710 N.E.2d 699, * * * paragraph one of the syllabus; see, also, *State v. Stern* (2000), 137 Ohio App.3d 110, 116, 738 N.E.2d 76 * * *. If the two offenses each contain a separate element, the offenses are of dissimilar import and the court's inquiry ends--the multiple convictions are proper. See *State v. Rance,* 85 Ohio St.3d at 636, 1999 Ohio 291, * * *.

Here, considered in the abstract, aggravated arson as charged in count two required proof that, in setting the fire, Campbell created

a substantial risk of serious physical harm to a person. But the conviction for count three required proof that Campbell caused physical harm to any occupied structure. See R.C. 2909.02(A). Aligning the statutorily defined elements of each crime in the abstract, we hold that each offense required proof of an element that the other did not, and that they were not allied offenses of similar import. See *State v. Rance,* 85 Ohio St.3d at 638, 1999 Ohio 291, * * *. Because the offenses were of dissimilar import, separate sentences were permissible. * * *

[*P33] Other courts have similarly held that the offenses at issue are not allied offenses of similar import. See *State v. Stambaugh* (Sept. 30, 1999), Trumbull App. No. 97-T-0230, 1999 Ohio App. LEXIS 4656 ("violations of R.C. 2909.02[A][1] and [A][2] are not allied offenses of similar import * * *. Creating a substantial risk of serious physical harm to a person does not necessarily cause physical harm to an occupied structure"); *State v. Simon* (Nov. 27, 1989), Clermont App. No. CA89-03-010, 1989 Ohio App. LEXIS 4388 ("[p]aragraphs [A][1] and [2] of the aggravated arson statute are clearly not allied offenses of similar import as one involves substantial risk of physical harm to persons and the other involves physical harm to an occupied structure"); *State v. Price* (Apr. 22, 1993), Cuyahoga App. No. 61891, 1993 Ohio App. LEXIS 2170 ("causing physical harm to an occupied structure and causing the risk of harm to persons therein are not allied offenses of similar import").

[*P34] Based upon the above authority, we find unpersuasive appellant's contention that the trial court erred in the instant case in failing to merge the sentences. Accordingly, appellant's fifth assignment of error is without merit and is overruled.

*Cody*, 2007 Ohio App. LEXIS 5938.

This interpretation of the Ohio aggravated arson statute shows plainly that the two sections under which Petitioner was charged have different elements. For one of them the State must prove that a defendant's acts created a substantial risk of harm to a person; for the other, that a defendant actually caused physical harm to an occupied structure. The court of appeals points out how it would be possible to commit either one of these offenses without violating the other. Thus the Ohio aggravated arson statute easily passes the *Blockburger* different elements

test.

Moreover, even if the elements were the same, the constitutional question would be whether the state legislature had intended cumulative punishments.

> The Supreme Court has interpreted the multiple-punishments aspect of the Double Jeopardy Clause as protecting defendants from being punished more than once for a single act when the legislature does not intend for the punishments to be cumulative. See *Albernaz v. United States*, 450 U.S. 333, 344, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981). In other words, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983); see *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009) ("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses."). When two different statutory provisions authorize punishment for the same act, "[t]he first step is to determine whether [the legislature] intended to punish cumulatively the same conduct which violates two statutes." *United States v. Johnson,* 22 F.3d 106, 107-08 (6th Cir. 1994); see *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984) ("[T]he question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent.").

*Volpe v. Trim*, ___ F.3d ___, 2013 U.S. App. LEXIS 439 *15-16 (6th Cir. Jan. 6, 2013).  The Sixth Circuit also made it clear in *Volpe* that a habeas court is bound by state court interpretation of legislative intent.

> Moreover, "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) (citing *Hunter*, 459 U.S. at 368; *O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S. Ct. 740, 38 L. Ed. 2d 702 (1974)). "Under the [D]ouble [J]eopardy [C]lause, when evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent." *Id*. (citations omitted). "Thus, for purposes of double jeopardy analysis, once a state court

> has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination."[1] *Id*.; *see Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Jones v. Sussex I State Prison*, 591 F.3d 707, 710 (4th Cir. 2010) ("[W]hen the charged offenses violate state law, the double jeopardy analysis hinges entirely on the state-law question of what quantum of punishment the state legislature intended. Once a state court has answered that state-law question, there is no separate federal constitutional standard requiring that certain actions be defined as single or as multiple crimes." (internal citation and alteration omitted)).

*Id*. at *17-18.  In this case the Ohio Court of Appeals has definitively said that aggravated arson under Ohio Revised Code § 2909.02(A)(1) and (A)(2) are not allied offenses of similar import within the meaning od Ohio Revised Code § 2941.25 and therefore may be separately punished.

Cody is right in claiming that he did only one act:  starting the fire in the dryer vent.  But that one act caused separate consequences which satisfied both aggravated arson statutes.  It created actual damage to an occupied structure and it created a substantial risk of harm to a number of persons.  Does Petitioner doubt that, if the explosion had killed Ms. Edwards, her two children, and her mother, he could have been charged with four counts of murder?  Under the Court of Appeals' binding interpretation of Ohio law, he could probably have been charged with and convicted of creating a substantial risk of harm to all four of those people.  Under Ohio law, an "occupied structure" does not have to be actually occupied at the time it is set afire to satisfy the statute, so it is perfectly possible to commit aggravated arson on an occupied structure when no one is home.  Ohio Revised Code § 2909.01(C); *see also State v. Fowler*, 4 Ohio St. 3d 18 (1983)(citation omitted).

The two statutes involved pass the *Blockburger* test:  each has at least one element not

present in the other.  In addition, the Ohio courts have definitively interpreted these two statutes as providing the possibility of the punishment imposed on Petitioner, even though he committed only one act.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice on the merits.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify that any appeal would not be in objective good faith.

January 16, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).